# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 12, 2011

No. 10-10869

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

verses

MOISES GARCIA,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, BENAVIDES, and HAYNES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Moises Garcia appeals the reduction of his sentence made pursuant to 18 U.S.C. § 3582(c). Because the district court did not err or abuse its discretion, we affirm.

I.

In 2007, Garcia pleaded guilty of possession with intent to distribute 500

No. 10-10869

grams or more of cocaine and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 21 U.S.C. § 841(b)(1)(B)(ii) and 18 U.S.C. § 924(c), respectively. Garcia's recommended sentencing guideline range of 110 to 137 months for the drug count resulted from his total offense level of 25, derived from the amount of cocaine and crack cocaine he possessed, and from his 13 criminal history points, which placed him in criminal history category VI.

The district court found that category VI overstated the seriousness of Garcia's criminal history[1] and so adjusted it to category V, resulting in a guide-line range of 100 to 125 months. The court noted that even if it were to depart down two offense levels and did not take into account the entire amount of drugs indicated in the presentence report, as Garcia urged, the amended range would be 84 to 105 months. The court stated that it could sentence Garcia to 100 months under either calculation, but it specified that it was using the former method of reducing the criminal history category. The court sentenced Garcia to 100 months on the drug count and 60 months on the firearm count, to run consecutively.

In 2010, Garcia filed for a sentence reduction pursuant to § 3582(c)[2] based on Amendment 706, a retroactively applicable amendment for crack cocaine offenses.[3] Under the amendment, Garcia's offense level would have been reduced by two, resulting in a guideline range of 92 to 115 months without the reduction to his criminal history category, and 84 to 105 months with the lower

---

[1] Six of Garcia's thirteen criminal history points arose from driving with a suspended license.

[2] "[I]f a defendant . . . has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) . . . , if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The policy statement at issue is U.S.S.G. § 1B1.10(b).

[3] *See* U.S.S.G. app. C, amend. 706 (Nov. 1, 2007) (made retroactive by U.S.S.G. app. C, amend. 713 (Mar. 3, 2008)).

No. 10-10869

category V that the district court actually used.

In the district court, Garcia suggested several other ways for the court to calculate a comparable sentence.[4]  First, he proposed that he receive a sentence the same number of months (ten) below the bottom of the new range as the court had departed from the old range, which would have yielded a sentence of 82 months.  Second, he proposed a downward departure by the same percentage as the prior departure, which would have led to a sentence of 83.6 months. Third, because the Sentencing Commission had proposed an amendment in 2010 that eliminated the addition of two criminal history points if a defendant committed an offense less than two years after release from imprisonment ("recency points"),[5] Garcia suggested that the district court reduce his criminal history by two more points than it had originally done, which would have resulted in a guideline range of 70 to 87 months.  Garcia argued that any of those methods would result in a comparable reduced sentence.

Garcia also contended that the court should impose a sentence of sixty months, regardless of whether it was comparable.  He conceded that *Dillon v. United States*, 130 S. Ct. 2683 (2010), held that under U.S.S.G. § 1B1.10(b), courts could not consider any issues at a § 3582(c)(2) modification hearing other than those raised by the retroactive amendment, but he maintained that the mandatory nature of that limitation exceeded the Commission's delegated authority in violation of the separation-of-powers principle, an argument expressly not addressed by the majority in *Dillon. See Dillon*, 130 S. Ct. at 2691 n.5.  In light of the 18 U.S.C. § 3553(a) factors, Garcia requested that the court reduce his sentence to sixty months even though it might be more than a com-

---

[4] Garcia conceded at the hearing that the 84-to-105-month range was also a valid calculation.

[5] Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 75 Fed. Reg. 27388, 27393 (May 14, 2010) (eff. Nov. 1, 2010).

No. 10-10869

parable reduction.

The government agreed that Garcia was eligible for a reduction of two to his offense level pursuant to Amendment 706, resulting in an amended guideline range of 84 to 105 months. The government did not, however, discuss Garcia's constitutional argument other than by saying that § 1B1.10(b) limited the extent of the reduction that could be granted and, in this case, prevented the court from imposing a sentence below 84 months.

The court stated, "[T]o get started, I do not believe that I can under *Dillon* use this hearing as a basis for doing anything else other than making any adjustment that is sought under the amendments with respect to the cocaine . . . . I thought my authority was limited to that." Garcia responded "that there is a separation of powers problem with giving the [Sentencing] Commission the right to determine whether district courts have the power to vary below those guidelines." The court disagreed and determined that it was bound by *Dillon* to consider only the two-level retroactive reduction.

The court evaluated but rejected Garcia's alternative methods for a comparable reduction. Instead, it reduced the offense level from 25 to 23 per the retroactive amendment, reduced the criminal history category again from VI to V, and sentenced Garcia, at the bottom of the resulting range, to 84 months.

## II.

We review a district court's interpretation and application of the guidelines *de novo*. *United States v. Doublin*, 572 F.3d 235, 237 (5th Cir. 2009). A district court may reduce a term of imprisonment where the sentencing range has been subsequently lowered by the Sentencing Commission, § 3582(c)(2), "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The court conducts a two-step

No. 10-10869

inquiry when determining whether to reduce a sentence pursuant to § 3582(c)(2). *Dillon*, 130 S. Ct. at 2691.

First, the court must follow the instructions in the applicable policy statement, § 1B1.10(b), to decide whether the prisoner is eligible for a sentence modification and the extent of the reduction authorized, *Dillon*, 130 S. Ct. at 2691. Section 1B1.10 authorizes the court to reduce a sentence if the "defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in" §1B1.10(c). § 1B1.10(a). The court should determine "the amended guideline range that would have been applicable" if the amendment "had been in effect at the time the defendant was sentenced" but shall consider only the retroactively applicable amendments "and shall leave all other guideline application decisions unaffected." § 1B1.10(b)(1).

Additionally, a court is generally prohibited from reducing a sentence under § 3582(c)(2) "to a term that is less than the minimum of the amended guideline range." § 1B1.10(b)(2)(A). Such a reduction is permissible only "[i]f the original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing." § 1B1.10(b)(2)(B). In those situations, a court "may" impose "a reduction comparably less than the amended guideline range." *Id.* We review such sentence reductions for abuse of discretion.[6]

The second step requires the "court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [the

---

[6] *See United States v. Evans*, 587 F.3d 667, 671-74 (5th Cir. 2009); *see also* § 1B1.10 cmt. n.3 ("[T]he sentencing court has the discretion to determine whether, and to what extent, to reduce a term of imprisonment under [§ 1B1.10(b)(2)(B)]."); *United States v. Guidry*, 368 F. App'x 611 (5th Cir. 2010) ("The district court was not required to reduce [the defendant's] sentence [further] as he alleges. . . . There is no evidence that the district court intended to grant a greater reduction but erred in its mathematical calculation as [the defendant] intimates.").

5

No. 10-10869

retroactive amendment] is warranted in whole or in part under the particular circumstances of the case." *Dillon*, 130 S. Ct. at 2692. "Because reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings." *Id.*

Both the Supreme Court and this court have held that the mandatory nature of § 1B1.10 does not run afoul of *United States v. Booker*, 543 U.S. 220 (2005). *See Dillon*, 130 S. Ct. at 2692-93; *Doublin*, 572 F.3d at 238. But neither court has addressed whether § 1B1.10 raises separation-of-powers concerns. *See Dillon*, 130 S. Ct. at 2691 n.5; *United States v. Evans*, 587 F.3d 667, 671 (5th Cir. 2009).

III.

Garcia argues that the district court erred in concluding that it was powerless to alter his sentence in any manner other than by reducing his offense level by two and that the court's previous decision to impose a below-range sentence authorized any departure that was "comparable" to that imposed at the initial sentencing. Garcia concedes that the court's method of attaining a comparable reduction (by again reducing his criminal history category from category VI to V) is proper under § 1B1.10, but he maintains that the court could have used alternative methods to reach other sentences that were also comparably less than the original guideline range and that its decision not to consider those methods was an abuse of discretion. He contends that the court's comments at the hearing and its refusal to employ those other methods show that it believed erroneously that it did not have the authority to reduce the sentence by any other method than that employed at the original sentencing. Garcia asserts that if the district court had properly understood that it had broad authority in determining a comparable reduction, it might have considered the Sentencing Com-

No. 10-10869

mission's then-proposed amendment that eliminated recency points and other § 3553(a) factors.

Garcia misunderstands the district court and conflates several distinct issues. There are three questions before us: (1) Did the court abuse its discretion by calculating Garcia's comparable sentence in the manner that it did to the exclusion of Garcia's other methods of calculation? (2) Did the court err by not discounting Garcia's recency points in fashioning a comparable sentence? (3) Did the court err in determining that it had no authority to give a less-than-comparable sentence, considering Garcia's argument that § 1B1.10 violates the Constitution?

### A.

Garcia has failed to show that the district court abused its discretion by reducing his sentence in the matter that it did. The court kept his criminal history at the already-reduced level of category V and reduced his offense level by two, as Amendment 706 instructs. That it chose to do so instead of reducing his sentence by a certain number of months or by using a percentage formula is not an abuse of that discretion. It considered Garcia's other calculations and rejected them. Thus, the court did not err in rejecting Garcia's first and second proposed calculation methods.

### B.

Reviewing the district court's interpretation of the guidelines *de novo*, we conclude that the court did not reject Garcia's third comparable-reduction argument—that the court eliminate his recency points—because it lacked the authority to do so. Instead, the court rejected that argument because it believed that further reducing Garcia's criminal history was unnecessary because it had already reduced that history once before. The court explained,

7

I didn't make a decision about the guideline range sentence, and then deduct a certain number of months. I made a decision that the defendant's criminal history category was overstated, and he doesn't get double credit for that. He only gets that determination once. I thought it was overstated, and I continue to think it's overstated, but it doesn't get carried along to a greater degree now, because that's not what I would have done.

The court declined to reduce Garcia's criminal history further because it did not think the reduction was warranted, not because it thought it lacked the authority. And, even if it erroneously believed that it did lack the authority,[7] the error was harmless, because it would have imposed the same sentence regardless of the error. *See United States v. Mejia-Huerta*, 480 F.3d 713, 720 (5th Cir. 2007).

## C.

### 1.

The third issue is more complicated. Garcia properly preserved his argument that, on resentencing, a district court may disregard § 1B1.10 and impose a shorter than comparably reduced sentence, because Congress did not grant the Sentencing Commission the power to limit what a district court may consider in § 3582(c) proceedings. Before we address that argument, however, we turn to whether any error was harmless.

The burden of proving harmlessness is on the party defending the sentence. *Williams v. United States*, 503 U.S. 193, 203 (1992). If a district court is mistaken about its authority to consider some factor during sentencing, i.e., it has misapplied the guidelines, then we must remand for resentencing unless "it is clear . . . that the district court would have imposed the same sentence had it known that it could consider" that factor. *United States v. Davis*, 316 F. App'x 328, 332 (5th Cir. 2009) (citing *United States v. Burns*, 526 F.3d 852, 862 (5th

---

[7] Although, as explained in part III.C, it did not have the authority to deviate from § 1B1.10.

No. 10-10869

Cir. 2008)).

In *Burns*, the district court mistakenly believed that it had no discretion to consider its policy disagreement with the crack-cocaine-to-powder-cocaine disparity in the guidelines when fashioning the sentence. *Burns*, 526 F.3d at 861.[8] In sentencing Burns, the court stated,

> I recognize what you claim, which is claimed not only by you but by others . . . of the disparity between crack cocaine and cocaine sentencing. And that argument has been—discussion and debate has been going on in circuit courts and in the Congress and among the Sentencing Commission, but the guidelines are what the guidelines are today. . . . The Court finds that the facts do not warrant a downward departure . . . for taking into consideration the difference between crack cocaine crimes under the guidelines and cocaine offenses under the guidelines as a decision that's been made by the Congress of the United States and the Sentencing Commission.
>
> The Court finds it has no-limited discretion, if any. And if I do have discretion, I exercise my discretion not to downward depart on that basis.

*Id.* at 860-61. The government argued that the district court's statements showed that it would have imposed the same sentence had it known that it had the discretion to consider the crack/powder disparity, but we disagreed. We required resentencing, because Burns was "entitled to have his sentence set by a judge aware of [his] discretion." *Id.* at 862.

*Davis* involved issues similar to those in *Burns*. *See Davis*, 316 F. App'x 328. There, the defendant was appealing his sentence, but while the appeal was pending he filed a § 3582(c) motion based on the same amended guideline at issue in this case. At Davis's first sentencing, the district court stated,

> [W]hen I consider all of the factors that the Court is obligated to

---

[8] After the defendant's sentencing but before his appeal, the Supreme Court issued *Kimbrough v. United States*, 552 U.S. 85, 110 (2007), which held that "it would not be an abuse of discretion for a district court to conclude when sentencing . . . that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes . . . ."

consider in sentencing, I'm satisfied that an upward departure in this case is the appropriate thing to do and would be necessary to achieve a reasonable sentence, taking into account all of the factors that are to be considered under 18 United States Code, Section 3553(a).

*Id.* at 331.

As in *Burns*, the district court's statements in *Davis* did not make it obvious that it would have imposed the same sentence had it been aware of its authority. *Id.* at 332. But, because the court had considered and denied Davis's § 3582(c) motion, we decided to take judicial notice of the order. *Id.* In its denial, the district court did precisely what Davis sought in his appeal: It considered the crack amendments when analyzing the sentence and specifically rejected Davis's argument. Because of the denial, we stated that although "in other circumstances a remand might be warranted in light of *Burns* and *Kimbrough*, the order denying the § 3582(c)(2) motion clearly establishes that the district court would not adjust the sentence in light of the cocaine base/powder disparity given Davis's criminal history and other circumstances." *Id.*

*Burns* and *Davis* involved direct appeals and not, as here, appeals of sentence modifications under § 3582(c), but in both situations we analyze a district court's application and interpretation of the guidelines *de novo*, and thus we extend the logic of *Burns* and *Davis* to the § 3582(c) context. The fact that § 3582(c) resentencings are discretionary is of no consequence: Once a court grants a sentence modification, it must correctly interpret and apply the guidelines, otherwise we would not review such decisions *de novo*. If, for instance, two retroactive amendments apply to a defendant, but the district court mistakenly believes that one does not and refuses to consider that amendment in reducing the sentence, we should remand, just as in *Burns* and *Davis*, because the defendant is entitled to have his sentence modified by a judge aware of his discretion. *Burns* sets a high bar: A district court's mistaken belief regarding its authority

No. 10-10869

under the guidelines is not harmless even where it states that the modified sentence is appropriate in light of other factors and that even if it had discretion to analyze the supposedly impermissible factor, that factor would not affect the sentence.

Here, the court did not consider Garcia's request for a sentence below the minimum range. Before either side spoke, the court stated,

> I will also say, to get started, that I do not believe that I can under *Dillon* use this hearing as a basis for doing anything else other than making any adjustment that is sought under the amendments with respect to the cocaine. I'm not sure if you are arguing that I should do that. This isn't like the usual case where someone says, well, I'm just preserving this issue, and I'll convince the Supreme Court to change it.
>
> This is a case where the Supreme Court has already done it, and actually this is the position that I was taking when these issues were presented, that I thought my authority was limited to that. So if you have some argument differently, please feel free to make it.

In response, Garcia argued that *Dillon* had not reached the issue of whether § 1B1.10(b) violates the separation-of-powers doctrine, so he asked the court to rule whether it believed it had authority to vary below the Guidelines. The court said,

> Well, I'm going to rule that I cannot do that, and that that's the proposition that Dillon stands for, but you have your point. If another case or this case goes up to the Supreme Court, and it is determined otherwise, then I of course will follow the law. I believe that I do not have that authority, but that's an interesting issue, and have at it with the higher court then. . . . So in light of that then, are we here on a two-level adjustment? Up to a two-level adjustment?

If the district court was incorrect regarding its authority under *Dillon* and the guidelines, then it is not evident that the court would have imposed the same sentence absent the error. The court did not consider Garcia's arguments in

11

No. 10-10869

favor of imposing a below-guideline sentence of sixty months; it merely ruled that it did not have the discretion to consider such an argument. And although it did reject all of Garcia's arguments as to what would constitute a comparable sentence, that has no bearing on the issue of what it would have done had it known that a comparable sentence was not actually mandatory.

In *Burns*, there was even more evidence of harmlessness, such as the court's statement that "if I do have discretion, I exercise my discretion not to downward depart on that basis." But even that statement, we held, did not prove harmlessness, and so here too any error the district court may have committed cannot be harmless. We must, therefore, determine whether the court was correct in determining that it was bound by § 1B1.10 from sentencing Garcia to a lower-than-comparably-reduced sentence.

2.

Because of the foregoing conclusion, we reach the merits of Garcia's separation-of-powers argument, an issue this circuit has not yet addressed.[9] We turn first to the relevant statutes. In § 3582(c), Congress directed that sentence modification proceedings apply only to a specific group of defendants, that a court must retain the discretion to determine whether a reduction is warranted, that the factors listed in § 3553(a) must be considered in reducing a sentence, and that a court may reduce a sentence "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." In § 994-

---

[9] We have, however, refused to consider such an argument under plain-error review "[g]iven the lack of precedent suggesting a separation-of-powers problem with . . . § 1B1.10." *United States v. Evans*, 587 F.3d 667, 669 (5th Cir. 2009) (internal citations and quotation marks omitted); *see also United States v. Anderson*, 591 F.3d 789, 791-92 (5th Cir. 2009). Both of those opinions were issued before *Dillon*. Other circuits to address this issue after *Dillon* have either determined with very little analysis that § 1B1.10 does not pose separation-of-powers concerns, *see United States v. Fox*, 631 F.3d 1128, 1132 (9th Cir. 2011); *United States v. McGee*, 615 F.3d 1287, 1293 n.2 (10th Cir. 2010), or have declined to address the issue, *see United States v. Turnley*, 627 F.3d 1032, 1037-38 (6th Cir. 2010).

No. 10-10869

(a)(2), Congress granted the Commission the authority to promulgate "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in section 3553(a)(2)." In § 994(t), Congress instructed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." In § 994(u), Congress stated that "[i]f the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."

A common-sense reading of the above-quoted phrase "if such a reduction is consistent with applicable policy statements" indicates that, regardless of whether Congress wanted policy statements to be binding in the sentencing context, it wished them to be binding in § 3582(c) proceedings. If a sentence reduction is inconsistent with a policy statement, it would violate § 3582(c)'s directive, so policy statements must be binding.

These statutory provisions are a sufficient delegation. Congress has set forth an intelligible principle: It gave the Commission the discretion to determine, as we have said, "in what circumstances and by what amount" a sentence may be reduced, *see* § 994(u), and that reductions should further the purposes of § 3553(a), *see* §§ 994(2) and 3582(c). One could hardly say that there is "an absence of standards" to direct the Commission's issuance of § 1B1.10. To be sure, there is no specific delegation to the Commission of the power to make the guidelines binding in a limited set of circumstances or to prevent a court from considering non-§ 3553(a) factor during sentencing. But that argument is nothing more than a strawman. The threshold for a constitutionally valid delegation is much lower than was the delegation in *Mistretta*, and Congress need not

13

No. 10-10869

expressly authorize every determination made by the Commission. Congress has set forth sufficient standards for the Commission in exercising its discretion, and § 1B1.10 does not present a separation-of-powers problem.

The judgment of sentence is AFFIRMED.[10]

---

[10] Judge Haynes concurs in the judgment only.